IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| **DANIEL B. RIMILLER,**  )<br>  Plaintiff  )<br>  )<br>  )<br>  )<br>**CAROLYN W. COLVIN,**  )<br> **Acting Commissioner of Social Security,**  )<br>  Defendant  ) | <br><br><br>Civil Action No. 2:14cv00044<br>**MEMORANDUM OPINION**<br><br>By: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I.  Background and Standard of Review*

Plaintiff, Daniel B. Rimiller, ("Rimiller"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq*. (West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the

-1-

case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Rimiller protectively filed his application for SSI on May 4, 2011, alleging disability as of April 12, 2011,[1] due to ruptured discs in his back and anxiety. (Record, ("R."), at 189-93, 199, 203.) The claims were denied initially and on reconsideration. (R. at 99-103, 105-07, 110-15, 116-18, 120-22.) Rimiller then requested a hearing before an administrative law judge, ("ALJ"). (R. at 123.) A hearing was held on June 26, 2013, at which Rimiller was represented by counsel. (R. at 29-69.)

By decision dated July 18, 2013, the ALJ denied Rimiller's claim. (R. at 13-24.) The ALJ found that Rimiller had not engaged in substantial gainful activity since May 16, 2012, the alleged amended onset date. (R. at 15.) The ALJ determined that the medical evidence established that Rimiller suffered from severe impairments, namely degenerative disc disease; obesity; history of polysubstance abuse and dependence; anxiety disorder; and probable borderline intellectual functioning, but he found that Rimiller did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.) The ALJ found that Rimiller had the residual functional capacity to perform simple, routine, repetitive, unskilled light work,[2] that did not require more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching or crawling, that did not require him to climb ladders, ropes or scaffolds, to work around hazardous machinery or

---

[1] At his hearing, Rimiller amended his onset date to May 16, 2012. (R. at 32.)

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2015).

unprotected heights and that required no more than occasional exposure to excessive vibration. (R. at 17-18.) The ALJ found that Rimiller was unable to perform any of his past relevant work. (R. at 22.) Based on Rimiller's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Rimiller could perform, including jobs as an assembler, a packer/packing line worker and an inspector/tester/sorter. (R. at 23.) Thus, the ALJ found that Rimiller was not under a disability as defined by the Act, and was not eligible for SSI benefits. (R. at 25.) *See* 20 C.F.R. § 416.920(g) (2015).

After the ALJ issued his decision, Rimiller pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 1-4.) Rimiller then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2015). The case is before this court on Rimiller's motion for summary judgment filed June 10, 2015, and the Commissioner's motion for summary judgment filed July 13, 2015.

## II. Facts[3]

Rimiller was born in 1982, (R. at 189), which classifies him as a "younger person" under 20 C.F.R. § 416.963(c). Rimiller obtained his general education development, ("GED"), diploma while incarcerated.[4] (R. at 34.) He stated that he obtained a carpentry certificate in 1999. (R. at 37.) Rimiller has prior work

---

[3] Rimiller does not challenge the ALJ's finding with respect to his alleged physical impairments. Therefore, the discussion of the medical evidence will be limited to those records pertaining to Rimiller's mental health.

[4] Rimiller was incarcerated for breaking and entering, which resulted in the death of two people. (R. at 39, 53-54.) Rimiller testified that he was "hanging out" with a group of people and someone that he barely knew broke in and shot two of the people in the group, which led to his breaking and entering arrest. (R. at 54.)

-3-

experience as a mechanic, a driller helper and a sprinkler installer. (R. at 37, 45-46.) He stated that he had not taken prescribed pain medication since February of 2013. (R. at 41.) Rimiller testified that he was not on any medication. (R. at 44.) He stated that he had nightmares almost every night concerning the shooting death of the two people that occurred during the breaking and entering for which he was convicted. (R. at 55.)

John Newman, a vocational expert, also was present and testified at Rimiller's hearing. (R. at 61-68.) Newman was asked to consider a hypothetical individual who had the residual functional capacity to perform simple, routine, repetitive, unskilled light work that did not require more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching and crawling and that did not require him to climb ladders, ropes or scaffolds or to work around hazardous machinery or unprotected heights and that required nor more than occasional exposure to excessive vibration. (R. at 64.) He stated that such an individual could not perform Rimiller's past relevant work, but that there were other jobs available that such an individual could perform, including jobs as an assembler, a packer and an inspector, tester and sorter. (R. at 64-65.) Newman stated that there would be no work available that an individual could perform should he need to take unscheduled breaks for an unknown amount of time. (R. at 65.) He also stated that there would be no jobs available should the individual be absent from work once a week or if he had to leave work early at least one time a week. (R. at 65-66.) Newman stated that there would be no jobs available that an individual could perform should he miss more than two days of work a month. (R. at 66.) He also stated that, if the individual would be off task more than 10 percent of a workday, there would be no jobs available that the individual could perform. (R. at 66-67.)

In rendering his decision, the ALJ reviewed records from Wise County Public Schools; Bland Correctional Center; Augusta Correctional Center; Keen Mountain Correctional Center; George Grubbs, Psy.D., a state agency psychologist; Dr. Thomas M. Phillips, M.D., a state agency physician; Eugenie Hamilton, Ph.D., a state agency psychologist; Dr. Robert McGuffin, M.D., a state agency physician; Dr. Yemaya B. Gilliam, M.D.; Lonesome Pine Hospital; Kingsport Recovery Associates; and B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist.

On August 15, 2007, while incarcerated at Bland Correctional Center, Rimiller reported nightmares after he witnessed his co-defendant shoot and kill two victims. (R. at 330-35.) He reported that he was doing well. (R. at 330.) Psychological examination was normal. (R. at 332.) Rimiller's judgment and insight were deemed as fair. (R. at 332.) Rimiller was diagnosed with opioid dependence, cannabis abuse and cocaine abuse. (R. at 332.) His impairments were classified as "minimal." (R. at 333.)

On October 2, 2007, while incarcerated at Augusta Correctional Center, Rimiller reported that he did not need mental health treatment. (R. at 326.) He reported that he continued to have nightmares fairly frequently related to the shooting. (R. at 326.) Rimiller had an euthymic affect and congruent mood. (R. at 326.) His speech was normal in rate, tone and volume, and his thoughts were spontaneous. (R. at 326.) The examiner noted that Rimiller was in no apparent mental health distress. (R. at 326.) On October 11, 2007, Rimiller was diagnosed with polysubstance dependence. (R. at 325.) It was noted that Rimiller did not need or request psychotropic medication. (R. at 325.) On March 12, 2009, while incarcerated at Augusta Correctional Center, Rimiller reported problems with anxiety and night sweats. (R. at 322.) Rimiller had a slightly anxious affect and

-5-

congruent mood. (R. at 322.) His speech was normal in rate, tone and volume and his thoughts were spontaneous. (R. at 322.) The examiner noted that Rimiller was in mild mental health distress. (R. at 322.) On May 19, 2009, Rimiller reported that he felt sad and experienced occasional crying spells. (R. at 320.) He stated that he took Neurontin at night, which helped his symptoms of anxiety and depression; however, he reported that he continued to experience symptoms in the mornings and afternoon. (R. at 320.) Rimiller had a euthymic affect and congruent mood. (R. at 320.) His speech was normal in rate, tone and volume, and his thoughts were spontaneous. (R. at 320.) The examiner noted that Rimiller was in no apparent mental health distress at that time. (R. at 320.)

On September 14, 2010, while incarcerated at Keen Mountain Correctional Center, Rimiller reported that he "used to" experience nightmares and have panic attacks related to a crime that he witnessed. (R. at 316.) He stated that the nightmares and panic episodes had not interfered with his daily life during the past two years. (R. at 316.) It was noted that Rimiller demonstrated good social and interpersonal skills. (R. at 316.) His speech was normal in rate, tone and volume. (R. at 316.) Rimiller was diagnosed with post-traumatic stress disorder, ("PTSD"), resolved. (R. at 316.) It was noted that Rimiller was not experiencing any impairment in his daily living activities and that he reported no symptoms that were of clinical concern. (R. at 316.)

On August 15, 2011, George Grubbs, Psy.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding that Rimiller suffered from an anxiety-related disorder and a substance addiction disorder. (R. at 73-74.) He opined that Rimiller was mildly restricted in his ability to perform his activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 73.) Grubbs opined that Rimiller had not

-6-

experienced repeated episodes of decompensation of extended duration. (R. at 73.) Grubbs opined that Rimiller did not appear to have a severe mental impairment. (R. at 74.)

The record shows that Rimiller saw Dr. Yemaya B. Gilliam, M.D., from December 2011 through March 2012. (R. at 432-43.) Dr. Gilliam routinely reported that Rimiller was not angry, anxious or depressed. (R. at 433, 436, 439, 442.) In March 2012, Rimiller reported that his anxiety symptoms started after the birth of his child and that these symptoms were exacerbated by the stress of his girlfriend taking the child and leaving him. (R. at 432.) Dr. Gilliam placed no restrictions on Rimiller's work-related mental abilities.

On February 27, 2012, Eugenie Hamilton, Ph.D., a state agency psychologist, completed a PRTF finding that Rimiller suffered from an anxiety-related disorder and a substance addiction disorder. (R. at 84.) She opined that Rimiller was mildly restricted in his ability to perform his activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 84.) Hamilton opined that Rimiller had not experienced repeated episodes of decompensation of extended duration. (R. at 84.) Hamilton opined that Rimiller did not appear to have a severe mental impairment. (R. at 84.)

On October 11, 2012, Rimiller presented to the emergency room at Lonesome Pine Hospital for complaints of leg, ankle, knee and hip pain following a fall. (R. at 488-91.) While Rimiller reported that he experienced increased mood swings and anxiety, it was noted that his mood and affect were normal. (R. at 491.) Rimiller requested medication for anxiety, but was referred to his primary care provider for psychiatric assistance. (R. at 491.) He was diagnosed with anxiety. (R. at 492.)

The record shows that Rimiller was seen at Kingsport Recovery Associates from December 6, 2012, through January 10, 2013, for substance dependence. (R. at 521-24.) It was noted that Rimiller used Percocet, Lortab and Klonopin as much as possible. (R. at 523.) A urine drug screen performed in December 2012 showed positive for benzodiazepines and buprenorphine. (R. at 524.) Treatment notes indicate that Suboxone was prescribed. (R. at 521.) In January 2013, Rimiller reported that he was doing "okay," but still had cravings. (R. at 521.) It was noted that Rimiller was doing well. (R. at 521.)

On June 4, 2013, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Rimiller at the request of Rimiller's attorney. (R. at 526-36.) The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Rimiller obtained a verbal comprehension score of 68, a perceptual reasoning score of 73 and a full-scale IQ score of 64. (R. at 527.) Rimiller reported that he experienced auditory and visual hallucinations. (R. at 530.) He reported that he experienced nightmares, which caused him to wake up sweaty. (R. at 531.) Lanthorn diagnosed major depressive disorder, recurrent, severe with psychotic features; chronic PTSD; polysubstance dependence in sustained full remission; mild mental retardation; and personality disorder, not otherwise specified. (R. at 534.) He assessed Rimiller's then-current Global Assessment of Functioning, ("GAF"),[5] score at 50.[6] (R. at 534.)

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

Lanthorn completed a mental assessment, indicating that Rimiller had a satisfactory ability to understand, remember and carry out simple instructions and to maintain personal appearance. (R. at 538-40.) He opined that Rimiller had a seriously limited ability to follow work rules, to interact with supervisors, to function independently and to understand, remember and carry out detailed instructions. (R. at 538-39.) Lanthorn opined that Rimiller had no useful ability to relate to co-workers, to deal with the public, to use judgment, to deal with work stresses, to maintain attention and concentration, to understand, remember and carry out complex instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 538-39.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2015); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2015).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age,

education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2014); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Rimiller argues that the ALJ erred by failing to give full consideration to the findings of Lanthorn. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-6.) As noted above, Rimiller does not challenge the ALJ's findings as to his physical impairments or his physical residual functional capacity.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §

-10-

416.927(c), if he sufficiently explains his rationale and if the record supports his findings.

Rimiller argues that the ALJ erred by failing to give full consideration to the findings of Lanthorn. (Plaintiff's Brief at 4-6.) The ALJ noted that he considered Lanthorn's report and that he was not giving it significant weight. (R. at 21.) The ALJ stated Lanthorn's report was inconsistent with other substantial evidence of record. (R. at 22.)

I find that the ALJ did not err by failing to give full consideration to psychologist Lanthorn's findings regarding the severity of Rimiller's mental impairments and their effects on his ability to work. The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof in disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 416.927(c)(2) (2015). Here, Lanthorn is not a treating source of Rimiller. Thus, his opinion is not entitled to "controlling weight," even if supported by the clinical evidence and even if consistent with the other substantial evidence of record. Instead, the ALJ must consider the following factors in deciding how much weight to assign to Lanthorn's opinion: (1) the length of treatment of the claimant; (2) the frequency of examination of the claimant; (3) the nature and extent of the treatment relationship; (4) support of the source's opinion afforded by the medical evidence of record; (5) consistency of the opinion with the record as a whole; and (6) specialization of the source. *See* 20 C.F.R. § 416.927(c)(2).

First, Lanthorn examined Rimiller on only one occasion at the request of counsel. Thus, the length and frequency, as well as the nature and extent of Lanthorn's treatment, do not warrant giving his assessment any greater weight. Second, Lanthorn's opinion is not supported by the other substantial evidence in the record. Rimiller asserts that Lanthorn's opinion is supported by his longstanding history of mental impairments. (Plaintiff's Brief at 6.) A review of the record does not support Rimiller's argument. The record fails to show a long consistently documented mental health treatment record. As the ALJ explained, Rimiller's allegation of a "longstanding history of mental [symptoms]" is contradicted by the record as a whole. (R. at 21-22.) *See* 20 C.F.R. §§ 416.927(a)(2)-(d) (2015) (mandating that the ALJ evaluate and make findings about what all of the evidence shows, and if any of the evidence is inconsistent with other evidence or internally inconsistent, all of the evidence will be weighed).

The ALJ explained that "significant weight" could not be accorded to Lanthorn's opinion that Rimiller is unable to perform the basic demands of unskilled work for several reasons. (R. at 21.) The primary reason noted by the ALJ explained that Rimiller had a "work history" prior to incarceration, during incarceration and after incarceration. (R. at 21.) The ALJ noted that Rimiller "even admitted he used technical knowledge or skills, was lead worker, and had to write, and complete reports in his alleged past work." (R. at 21, 215-16, 258-60.) The ALJ further noted that, contrary to Rimiller's statements to Lanthorn, he recently and briefly treated for substance abuse, not for PTSD symptoms from his prison experience, a subjective allegation contradicted by his own treatment notes from prison, which showed no more than mild mental distress. (R. at 21-22, 316, 320, 325-26, 330, 332.) In addition, the record shows that Rimiller was treated by Dr. Gilliam from December 2011 through March 2012, who routinely reported that Rimiller was not angry, anxious or depressed. (R. at 433, 436, 439, 442.)

-12-

Furthermore, the state agency psychologists found that Rimiller did not suffer from a severe mental impairment. (R. at 73-74, 84.) In October 2012, Rimiller requested medication for anxiety while being treated in the emergency room at Lonesome Pine Hospital, and he was referred to his primary care physician for psychiatric assistance. (R. at 491.) There is no indication that Rimiller sought treatment for anxiety; however, he was treated for substance abuse from December 6, 2012, through January 10, 2013, at Kingsport Recovery Associates. (R. at 521-24.) Rimiller reported that he used Percocet, Lortab and Klonopin as much as possible and a urine drug screen showed positive for benzodiazepines and buprenorphine. (R. at 523-24.)

Based on the above reasoning, I conclude that substantial evidence supports the ALJ's weighing of the psychological evidence, and I further find that substantial evidence exists in the record to support the ALJ's mental residual functional capacity finding. I note that in discrediting Lanthorn's opinion, the ALJ necessarily discredited his finding as to Rimiller's intelligence level. The Fourth Circuit has held that an ALJ may reject an IQ score even if that score is the only such score in the record if the evidence of record supports no deficits in adaptive functioning. *See Hancock v. Astrue*, 667 F.3d 470, 474-76 (4th Cir. 2012). Such is the case here.

An appropriate order and judgment will be entered.

DATED: December 21, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE